## Richmond

PEARL MAE SHELTON v. AMERICAN RE-INSURANCE COMPANY, ET AL.

April 27, 1970.

Record No. 7140.

Present, All the Justices.

*Charles E. Carter*, for plaintiff in error.

*Eppa Hunton, IV* (*Robert L. Dolbeare; George K. Walker; Hunton, Williams, Gay, Powell & Gibson*, on brief), for defendants in error.

SNEAD, C.J., delivered the opinion of the court.

On January 22, 1967 Pearl Mae Shelton, appellant, was a paying passenger on a bus owned and operated by Danville Traction and Power Company and driven by its employee Carroll A. Mays. The bus was involved in an accident with an automobile driven by Herbert Venable, an uninsured motorist, and Mrs. Shelton sustained personal injuries. She instituted an action for damages against Danville Traction, its bus driver and Venable. Pursuant to the provisions of § 38.1-381(e)(1) a copy of the motion for judgment was served on American Re-Insurance Company which had a contract of in-

surance with Danville Traction. While that action was pending[1] American Re-Insurance filed a petition for a declaratory judgment asking the court to determine (1) whether its contract is a contract of bodily injury liability insurance within the meaning of Code, § 38.1-381(b); (2) whether Mrs. Shelton is an insured under Code, § 38.1-381(c), and (3) whether the contract provides coverage to Mrs. Shelton for payment of all sums to which she shall be legally entitled as damages from Venable. By order entered June 30, 1968, the trial court ruled that the uninsured motorist provisions of Code, § 38.1-381 do not attach to the contract between American Re-Insurance and Danville Traction. Mrs. Shelton was granted a writ of error to this judgment.

It is agreed that the sole issue before this court is whether the trial court erred in finding that the uninsured motorist provisions of § 38.1-381 do not attach to the insurance contract.

The record shows that at the time of Mrs. Shelton's injuries Danville Traction was a duly certified self-insurer under the Virginia Motor Vehicle Safety Responsibility Act. (§ 46.1-395). The policy issued to Danville Traction by American Re-Insurance was titled "Contract of Excess Third Party Public Liability and Property Damage Insurance". In consideration of the payment of a premium based upon Danville Traction's gross revenue, American Re-Insurance agreed "to repay any amount of ultimate net loss for which the Insured may be legally liable and shall pay as damages on account of Bodily Injury * * * arising out of and due to the operation of buses owned and/or operated by the Insured" subject to the following limitations:

"The Company agrees to indemnify the Insured for any amount in excess of the Insured's retention of FIFTEEN THOUSAND DOLLARS ($15,000) ultimate net loss which the Insured retains for its own account and risk, resulting from any one accident involving bodily injury liability or property damage liability or a combination of both as set forth above."

The policy also provided for a maximum liability of the insurer for ultimate net loss of the insured. It stated that the term " 'ultimate net loss' shall be understood to mean the amount of the principal sum of the settlement, award or verdict actually paid in cash * * * "; that the insured shall defend any claim "as though this insurance were not in force", and that the insurer at its own expense may participate

---

[1] Mrs. Shelton secured a judgment against defendant Venable in the sum of $14,000 and it is now final.

in the defense or settlement of claims. The policy did not have any uninsured motorist endorsement attached to it.

In support of her position that the provisions of § 38.1-381 do attach to the policy in question, Mrs. Shelton cites sub-section (b) thereof which reads:

"Nor shall any such policy or contract [bodily injury or property damage liability] *relating to ownership, maintenance or use of a motor vehicle* be so issued or delivered unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than the requirements of § 46.1-1(8), as amended from time to time * * *." (Italics supplied.)

The italicized words were added to the sub-section in 1964. Mrs. Shelton argues that by so doing the General Assembly specifically broadened the statute to cover any such policy or contract relating to ownership, maintenance or use of a motor vehicle; that American Re-Insurance's contract with Danville Traction is one relating to ownership, maintenance or use of a motor vehicle, and that the provisions of § 38.1-381 "attach to the policy by operation of law." See *Storm* v. *Nationwide Mut. Ins. Co.*, 199 Va. 130, 135, 97 S.E.2d 759, 762 (1957).

American Re-Insurance contends that since Danville Traction was issued a certificate of self-insurance by the Commissioner of the Division of Motor Vehicles pursuant to the provisions of Code, § 46.1-395, Danville Traction was not required to carry liability insurance to which an uninsured motorist endorsement would attach, and that the uninsured motorist provisions of Code, § 38.1-381 are not applicable to a self-insurer. In support of its contention American Re-Insurance relies upon *Yellow Cab Co.* v. *Adinolfi*, 204 Va. 815, 134 S.E.2d 308 (1964).

In that case, Adinolfi, an employee of Yellow Cab Company, was injured when the cab he was driving collided with a vehicle operated by one Rollins, an uninsured motorist. Adinolfi instituted an action against Rollins for damages and served a copy of the motion for judgment on Yellow Cab which had qualified as a self-insurer under § 46.1-395. A judgment in the sum of $4,000 was awarded Adinolfi against Rollins. Adinolfi brought action against Yellow Cab to enforce the judgment. In its grounds of defense Yellow Cab asserted that it, as a duly qualified self-insurer, was not liable to Adinolfi on the judgment secured against Rollins. The trial court

entered summary judgment for Adinolfi against Yellow Cab. On appeal the issue was whether § 38.1-381 requires the self-insurer to provide protection for damages resulting from the negligence of an uninsured motorist. We held that it did not and reversed the judgment of the court below. In the course of the opinion we said:

"The effect of subsection ·38.1-381(c)[2] is to exclude from the uninsured motorist coverage the damages caused by the negligence of the operator of the motor vehicle of a self-insured for the reason that the owner of such vehicle has been certified 'to be possessed of financial ability to respond to a judgment * * *' (Code § 46.1-395(b)) for personal injury or property damage arising out of the ownership, · use or operation of such vehicle (Code § 46.1-389(c)).

"It is obvious that an insurance company writing motor vehicle liability insurance, and not a self-insurer under the provisions of Code § 46.1-395, is the only party required to discharge the obligations under the mandatory uninsured motorist endorsement in an insurance policy." 204 Va. at 819, 134 S.E.2d at 311.

Danville Traction, being the holder of a duly authorized certificate of self-insurance, was not required to carry liability insurance, and as a self-insurer was excluded from the uninsured motorist coverage provided by the statute. The company voluntarily entered into a contract with American Re-Insurance by which it sought merely to protect itself on amounts actually paid, for injury or property damage, in excess of $15,000. In our view the General Assembly did not intend to include in the coverage of § 38.1-381 a contract of insurance, such as here involved, issued to a duly certified self-insurer. The mere fact that Danville Traction did carry such a policy for its own protection does not remove it from the category of a self-insurer. We therefore hold that the uninsured motorist endorsement required by § 38.1-381 does not attach to American Re-Insurance's policy issued to Danville Traction.

Having reached this conclusion, we find that it is unnecessary to discuss other questions raised.

The judgment appealed from is

*Affirmed.*

---

[2] § 38.1-381(c) provides in part:
"As used in this section, * * * the term *'uninsured motor vehicle'* means a motor vehicle as to which * * * there is no bond or deposit of money or securities in lieu of such bodily injury and property damage liability insurance and (iv) the owner of such motor vehicle has not qualified as a self-insurer under the provisions of § 46.1-395. * * *"