## Richmond

THE FIDELITY AND CASUALTY COMPANY OF NEW YORK v. WILLIAM HOWARD FUTRELL.

April 26, 1971.

Record No. 7398.

Present, All the Justices.

*Phillips M. Dowding* (*Dowding and Thomas*, on brief), for plaintiff in error.

*B. M. Millner; Frank O. Meade* (*Marshall, Blalock, Garner & Millner*, on brief), for defendant in error.

CARRICO, J., delivered the opinion of the court.

The question involved in this case is whether an employee may recover under the uninsured motorist provisions of an insurance policy issued to his employer where he is injured by an uninsured motorist who is a stranger to the employment. Relying upon such provisions, William Howard Futrell, the employee, recovered in the trial court a judgment in the sum of $15,000 against The Fidelity and Casualty Company of New York, the employer's insurance carrier. Fidelity was granted a writ of error.

Futrell was injured on October 5, 1964, while operating a vehicle owned by his employer, Noland Company, Inc., during the course of his employment. The vehicle was struck by an automobile being driven by Robert E. Coleman, an uninsured motorist and a stranger

to Futrell's employment. Futrell applied for and received benefits under the Workmen's Compensation Act.

In the ensuing personal injury action brought by Futrell against Coleman, Fidelity, which insured the Noland vehicle, and State Farm Mutual Automobile Insurance Company, which insured a private automobile owned by Futrell, appeared and defended pursuant to the provisions of the uninsured motorist statute, Code § 38.1-381(e) (1). Futrell recovered a judgment against Coleman in the sum of $35,000, which was affirmed by this court in *State Farm Ins. Co.* v. *Futrell*, 209 Va. 266, 163 S.E.2d 181 (1968). Thereafter, State Farm paid Futrell $15,000 under its policy. Futrell then made demand upon Fidelity for payment under its policy, and Fidelity refused to pay. The present litigation resulted.

The policy issued by Fidelity to Noland as the named insured is a Comprehensive Automobile Liability Policy providing protection against bodily injury and property damage liability. The policy contains an uninsured motorist endorsement for which Noland paid an additional premium of $820. In the endorsement, Fidelity agrees to pay, within specified limits, "all sums which the Insured . . . shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile." That Futrell plainly comes within the definition of the term "insured" in the endorsement cannot be contested.

Therefore, under the facts of the case and the pertinent policy provisions, affirmance of the judgment in favor of Futrell against Fidelity would be clearly indicated. Fidelity, however, contends that this court, in *Aetna* v. *Kellam*, 207 Va. 736, 152 S.E.2d 287 (1967), has already decided that, under similar policy provisions, recovery is barred to an employee in the position of Futrell. Fidelity's contention requires a re-examination of *Aetna* v. *Kellam*.

In the *Aetna* case, Kellam and Bailey were both employees of Sample, whose motor vehicles were insured by Aetna in a single policy containing uninsured motorist provisions. During the course of their employment and while each was operating a Sample-owned vehicle, Bailey collided with Kellam, causing injury to the latter. Kellam filed an action against Bailey for his injuries, whereupon Aetna instituted declaratory judgment proceedings to determine whether it was liable to Kellam under its policy issued to Sample. The trial court held that Kellam had a right to rely on Aetna's policy, but we reversed.

There were two issues in *Aetna*: (1) whether Bailey was operating an uninsured vehicle, and (2) whether Kellam was an "insured" within the meaning of the provisions of Aetna's policy.

In the uninsured motorist endorsement of Aetna's policy, it was provided that the term "insured" included the named insured and also any other person while occupying an insured automobile. The term "insured automobile" was defined to mean an automobile "with respect to which the bodily injury and property damage liability coverages of the policy apply."

The bodily injury and property damage liability coverages applied, according to Aetna's main policy, to pay all sums which the insured, or someone operating with his permission, should become legally obligated to pay as damages resulting from the use of a covered automobile. But there was also included in the main policy a provision that the liability coverage did not apply "to any employee with respect to injury to . . . another employee of the same employer injured in the course of such employment in an accident arising out of the . . . use of the automobile in the business of such employer."

Therefore, since Kellam and Bailey were co-employees driving Sample-owned vehicles and Kellam's injury occurred in the course of their employment, Aetna's liability coverage did not apply. Thus, the vehicle operated by Bailey was rendered uninsured, and at the same time, Kellam was disqualified as an insured under the uninsured motorist provisions of the policy.

This was sufficient to decide the issues in the *Aetna* case, and the decision should have been limited, as we now limit it, to the situation where an employee is injured by a co-employee during the course of their employment by the named insured. However, the court went further. It considered the effect of an exclusion clause in Aetna's main policy, similar to one in Fidelity's policy here, and concluded that Kellam was excluded from coverage by operation of that clause.

The exclusion clause provided that the bodily injury liability coverage of the policy did not apply to injury of any employee of the insured arising out of and in the course of employment by the insured. But, since Kellam was already excluded from coverage under the co-employee provision just discussed, it was unnecessary to decide the effect of the exclusionary clause. Moreover, there was not cited to the court, and the court did not consider, the application of a provision in Aetna's uninsured motorist endorsement, similar to one in Fidelity's endorsement here. That provision stated, "None of

the . . . Exclusions . . . of the policy shall apply to the insurance afforded by this endorsement. . . ."

Thus, in plain language, Aetna provided that the employee exclusion did not apply to the uninsured motorist coverage. So what was said in the *Aetna* case and what is stated in the exclusionary clause in the Fidelity policy now under consideration cannot be effective to prevent Futrell's recovery here.

As has been indicated, the facts of this case bring Futrell within the terms of Fidelity's uninsured motorist endorsement, and nothing excludes him. He was injured by an uninsured motorist who was a stranger to his employment. He was occupying an automobile owned by the named insured. It was an insured automobile because Futrell was using the vehicle with the permission of Noland and because, had he negligently caused injury to the person or property of a stranger to the employment, the bodily injury and property damage coverages of the policy would have applied to protect against his and Noland's liability for such injury.

Accordingly, the judgment of the trial court will be affirmed.

*Affirmed.*